# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**ROBERT CEASAR (#388150)**                          **CIVIL ACTION NO.**

**VERSUS**                                          **17-1691-SDD-EWD**

**LOUISIANA DEPARTMENT OF**
**CORRECTIONS, ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on July 26, 2019.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

ROBERT CEASAR (#388150)                    CIVIL ACTION NO.

VERSUS                                     17-1691-SDD-EWD

LOUISIANA DEPARTMENT OF
CORRECTIONS, ET AL.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court are two Motions to Dismiss: the first filed on behalf of Defendants, the Louisiana Department of Public Safety and Corrections ("DOC"), James LeBlanc, Robert Rowe, Jeremy McKey, and Ricky Sharkey ("Defendants") urging dismissal of all claims brought against these Defendants;[1] and the second filed on behalf of Willie Rosso urging dismissal of all claims brought against him.[2]  For the following reasons, the undersigned recommends the Motion filed on behalf of DOC, LeBlanc, Rowe, McKey, and Sharkey be granted in part and denied in part and that the Motion filed on behalf of Rosso be granted.

## I.    Background

*Pro se* Plaintiff, Robert Ceasar ("Plaintiff"), an inmate incarcerated at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed suit on November 20, 2017 against DOC, James LeBlanc, the Louisiana State Prison's Chaplains [sic] Department, Robert Rowe, Jeremy McKey,

---

[1] R. Doc. 41 & 41-1.  Due to inconsistencies between the Motion and Memorandum filed by Defendants, it is unclear whether Defendants seek to have all claims against Rowe dismissed or only the official capacity claims.  In the Motion Defendants request dismissal of "this suit." In the accompanying memorandum, Defendants ask for dismissal of all claims against DOC, LeBlanc, McKey, and Sharkey, as well as dismissal of only the official capacity claims against Rowe.  In light of the discrepancy, this Report addresses the individual capacity claims against Rowe, as well as the official capacity claims.
[2] R. Doc. 56.

Gabriel Hebert,[3] and Rickey Sharkey.[4]  Plaintiff later supplemented his Complaint to add Lt. Col. Paul Smith and Major Willie Rosso to the action.[5]  Plaintiff alleges that DOC failed to promptly update its grooming policy in light of the Fifth Circuit's recent decision in *Ware v. Louisiana Department of Corrections*.[6]  Plaintiff further alleges that James LeBlanc showed deliberate indifference for failing to "immediately cause the Department's offender grooming policy to be updated to conform with *Ware*…as applied to Rastafarian offenders."[7]

Shortly after the Fifth Circuit's decision in *Ware*,[8] Plaintiff took the Nazareth vow not to cut or style his hair, and on multiple occasions between September and November 2017, he allegedly informed the Chaplain's Department at LSP that, as part of his Rastafarian faith, he could not cut or style his hair.[9]  Plaintiff alleges he attempted to begin a dialogue with the Chaplain's Department regarding his faith and the grooming policies at LSP.[10]  Plaintiff alleges the Chaplain's Department of LSP has been deliberately indifferent for failing to have LSP immediately update its policy to conform with *Ware*.[11]  Both Rickey Sharkey, who is the head chaplain at LSP, and the Chaplain Department at LSP are named for their failure to take action to have the policies at issue updated to conform with *Ware*.

In addition to Plaintiff's complaints regarding the policies, Plaintiff alleges that Robert Rowe used the policies to retaliate against Plaintiff.[12]  On approximately June 13, 2017, Plaintiff

---

[3] At the time of the filing of the Complaint Hebert's first name was unknown, but in Plaintiff's Opposition to the Motion to Dismiss, he includes Hebert's first name as "Gabriel." (R. Doc. 42, p. 9).  Hebert was served on October 3, 2018 but has yet to file responsive pleadings. (R. Doc. 38).
[4] R. Doc. 1.
[5] R. Docs. 6 & 19.  Paul Smith was later dismissed via an amended complaint (*See* R. Doc.60), so any potential claims against Paul Smith are not discussed further in this report.
[6] 866 F.3d 263 (5th Cir. 2017). *See* R. Doc. 1, p. 4.
[7] R. Doc. 6, pp. 1-2.
[8] *Ware* was decided on July 28, 2017.
[9] R. Doc. 1, pp. 5 & 7.
[10] R. Doc. 1, p. 5.
[11] R. Doc. 1, p. 8.
[12] R. Doc. 1, p. 5.

testified against Rowe and an unknown other official referred to as "Franklin" in a federal civil suit brought by fellow inmate Chris Gage. Thereafter, Plaintiff alleges various hardships have been inflicted upon him by prison officials, including Rowe, because of Plaintiff's testimony.

The first such instance allegedly occurred on October 4, 2017 when Plaintiff's cellmate allegedly attacked Plaintiff in his sleep.[13] Plaintiff alleges that Rosso wrote Plaintiff up in retaliation for Plaintiff's testimony in the Chris Gage matter.[14] Plaintiff blames Rosso for the finding that Plaintiff was guilty for the October 4, 2017 incident.[15] Plaintiff alleges that Rosso "involved himself in the complicit systematic ploy to place hardships on Plaintiff for his testimony in the Chris Gage civil trial."[16] As a result of the October 4, 2017 incident, Plaintiff was placed in administrative segregation. The inmate who had attacked Plaintiff was tasked with packing Plaintiff's belongings which allegedly resulted in some of Plaintiff's belongings being stolen, for which Plaintiff also blames Rosso.[17]

Thereafter, on November 1, 2017, Rowe allegedly called Plaintiff a "rat" or "snitch," referring to the Gage trial, and proceeded to issue Plaintiff a disciplinary infraction for failing to shave, despite other prisoners having beards and not being ordered to shave.[18] Plaintiff informed Jeremy McKey of the incident and alleges McKey failed to properly investigate.[19] Plaintiff went to "disciplinary court" for the November 1, 2017 disciplinary report. Gabriel Hebert presided over the disciplinary proceedings.[20] Plaintiff alleges that Hebert asked Plaintiff what his "problem" was with Rowe but proceeded to "shut [Plaintiff] up" before Plaintiff could answer or provide any

---

[13] R. Doc. 1-2, p. 7.
[14] R. Docs. 6, pp. 5-7; 18, pp. 1-2.
[15] R. Doc. 6, p. 6.
[16] R. Doc. 6, pp. 6-7.
[17] R. Doc. 1-2, pp. 7-8.
[18] R. Doc. 1, pp. 14-15.
[19] R. Doc. 1, p. 5.
[20] R. Doc. 1, p. 16.

evidence.[21]  Hebert subsequently sentenced Plaintiff to twelve weeks "loss of recreation yard" and loss of canteen privileges.[22]  Plaintiff alleges that Hebert's actions--in not letting Plaintiff fully testify at the disciplinary proceeding--constitute deliberate indifference, and that the loss of recreation time constitutes cruel and unusual punishment considering the length of the punishment.[23]  Prior to being placed in administrative segregation by Hebert, Plaintiff was already in administrative segregation and had a loss of privileges due to the disciplinary report arising from the October 4, 2017 incident.[24]

Plaintiff has also alleged he was denied due process and equal protection by not being afforded a right of appeal to the Secretary from disciplinary decisions.[25]  Plaintiff also complains regarding the handling of his disciplinary appeal but does not assert these complaints against any Defendant in particular.[26]  Plaintiff seeks injunctive, declaratory, and monetary relief.  Regarding the injunctive relief sought, Plaintiff requests that Dep't. Reg. B-08-003 (governing offender grooming) be declared null and void.[27]

## II.    Law & Analysis

### A.  Standard of Review

In *Bell Atlantic Corp. v. Twombly*,[28] and *Ashcroft v. Iqbal*,[29] the Supreme Court clarified the standard of pleading that a plaintiff must meet to survive a motion to dismiss pursuant to Rule 12(b)(6).  Specifically, "[f]actual allegations must be enough to raise a right to relief above the

---

[21] R. Doc. 1, p. 16.
[22] R. Doc. 1, p. 17.
[23] R. Doc. 1, p. 17.  Plaintiff also reiterated his claim for cruel and unusual punishment based upon the fact that he had not been allowed recreation or "yard" time in his first amended complaint.  (R. Doc. 4, pp. 3-4).
[24] R. Doc. 1, p. 17.
[25] R. Doc. 4, pp. 1-2.  Plaintiff states he was granted remand for the October 4, 2017 placement in administrative segregation and that the report against him was eventually dismissed.  (R. Doc. 18, pp. 1-2).
[26] R. Doc. 6, pp. 3-4.
[27] R. Doc. 1, p. 18.
[28] 550 U.S. 544 (2007).
[29] 556 U.S. 662 (2009).

speculative level."[30]  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[31]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[32]  It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"[33] "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[34]

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint."[35]  Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"[36] Notwithstanding, the court need not accept "a legal conclusion couched as a factual allegation,"[37] or "naked assertions [of unlawful conduct] devoid of further factual enhancement."[38]  Moreover, the federal pleading rules simply require a "short and plain statement of the claim showing that the pleader is entitled to relief."[39] The task of the court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" has been asserted.[40]

---

[30] *Bell Atlantic Corp.*, 550 U.S. at 555.
[31] *Ashcroft*, 556 U.S. at 678.
[32] *Id.*
[33] *Id.* at 679.
[34] *Id.* at 678 (internal quotation marks omitted).
[35] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).
[36] *Id.* (citation omitted).
[37] *Papasan v. Allain*, 478 U.S. 265, 286 (1986).
[38] *Ashcroft*, 556 U.S. at 678 (internal quotation marks omitted).
[39] Fed. R. Civ. P. 8(a)(2).
[40] *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014).

### B.  Official Capacity Claims

The moving Defendants correctly assert that, to the extent Plaintiff is asserting monetary claims against them in their official capacities, such claims are barred.[41] 42 U.S.C. § 1983 does not provide a federal forum for a litigant who seeks monetary damages against either a state or its officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983.[42] In addition, in *Hafer v. Melo*,[43] the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment.[44] Accordingly, any § 1983 claims asserted against these Defendants in their official capacities for monetary damages are subject to dismissal.

### C.  Claims against DOC

With respect to the claims against DOC, Defendants are correct that Plaintiff has failed to state a claim upon which relief may be granted.  Section 1983 creates a cause of action against "[e]very *person* who, under color of any [state law] ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution."[45]  Only a "person" may be sued for violation of an inmate's constitutional rights.[46]  DOC is not a person within the meaning of § 1983.[47]  Accordingly, all claims against DOC should be dismissed.

---

[41] Defendants allege it is unclear in what capacities the Defendants are being sued; however, it is clear from the captions of the Complaint and Amended Complaint that each Defendant is being sued in both his or her official and individual capacities. *See also*, R. Doc. 1, p. 17 and R. Doc. 42, p. 10.
[42] *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989).
[43] 502 U.S. 21 (1991).
[44] *Id*. at 25.
[45] 42 U.S.C. § 1983 (emphasis added).
[46] *Id.*
[47] *Washington v. Louisiana*, 425 F.App'x. 330, 333 (5th Cir. 2011).

### D.  Individual Capacity Claims

In contrast, Plaintiff's § 1983 claims for monetary damages asserted against LeBlanc, McKey, Rowe, Sharkey, and Rosso[48] in their individual capacities seek to impose personal liability for actions taken under color of state law and are not treated as a suit against the state.[49]  Those claims are analyzed below.

### 1.  Claims under RLUIPA[50]

Regarding the claims against LeBlanc, McKey, Rowe, and Sharkey, the Fifth Circuit has held that RLUIPA does not create a cause of action against defendants in their individual capacities.[51]  Accordingly, to the extent Plaintiff's Complaint seeks damages under RLUIPA against LeBlanc, McKey, Rowe, Sharkey or Rosso in his individual capacity, Plaintiff's claims fail as a matter of law.  As Plaintiff is also not entitled to monetary damages against any Defendant in his official capacity due to sovereign immunity, the only remaining claims for monetary damages are based upon the free exercise clause against LeBlanc, McKey, and Sharkey; equal protection as to Rowe; retaliation as to Rowe and Rosso; and conspiracy, deprivation of due process as a result of an unfair disciplinary proceeding, and loss of property against Rosso.

### 2.  Claims based upon the First Amendment Free Exercise Clause against LeBlanc, McKey and Sharkey

Plaintiff's claims rooted in the First Amendment against LeBlanc, McKey, and Sharkey in their individual capacities fail as well.  With respect to the individual capacity claims, Defendants

---

[48] As Gabriel Hebert has not been served and is not a movant herein and as Paul Smith has been dismissed via an amendment to the Complaint by Plaintiff, the potential claims against those defendants are not fully discussed.

[49] *Id*. at 29.

[50] Though Plaintiff does not specify if he is pursuing his action based upon the First Amendment or RLUIPA, since he is proceeding *pro se*, the Court interprets his pleadings broadly as making claims under both the First Amendment and RLUIPA.

[51] *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 331 (5th Cir. 2009).  *See also McFaul v. Valenzuela*, 684 F.3d 564, 576 (5th Cir. 2012).

first argue that the individual capacity claims against LeBlanc, McKey, and Sharkey should be dismissed because LeBlanc, McKey, and Sharkey were operating solely in their supervisory capacities and thus, cannot be held liable under § 1983.  Regarding Defendants LeBlanc and Sharkey, Plaintiff's only allegations, when read broadly, indicate that LeBlanc and Sharkey infringed upon Plaintiff's right to freely exercise his religion by not promptly updating the prisoner grooming policy following the *Ware* decision.

Supervisory officials may be held liable under § 1983 only if they affirmatively participate in acts that cause constitutional deprivation or implement unconstitutional policies that causally result in plaintiff's injury.[52]  Any allegation that a named defendant is responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* is alone insufficient to state a claim under § 1983.[53]  Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, an inmate plaintiff must be able to show that the deprivation of his constitutional rights has occurred as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law.[54] Supervisory liability[55] can be found to exist if a supervisory official implements a policy so deficient that the policy itself may be seen to be a repudiation of constitutional rights and may be seen to be the moving force behind a constitutional violation.[56]

---

[52] *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992).

[53] *See Ashcroft*, 556 U.S. at 676 (2009), *citing Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). *See also Bell v. Livingston*, 356 Fed. Appx. 715, 716-17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability").

[54] *Lozano*, 718 F.2d at 768.

[55] Though the term supervisory liability is often used, the Supreme Court has described this as a "misnomer" since "[e]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft*, 556 U.S. at 677.

[56] *Thompkins v. Belt*, 828 F.2d 298 (5th Cir. 1987).

Plaintiff does not claim either LeBlanc or Sharkey was personally involved in the repudiation of Plaintiff's rights. Rather, Plaintiff claims that LeBlanc and Sharkey failed to promptly update a policy that had been declared by the Fifth Circuit to violate RLUIPA. Plaintiff further claims that the failure to update this policy gave Rowe the tools necessary to retaliate against Plaintiff causing a repudiation of Plaintiff's rights. Thus, supervisory liability of LeBlanc and Sharkey may only be found if the policy itself violates constitutional rights and is the moving force behind a constitutional violation. Such is not the case here.

The ruling in *Ware* was based upon the Religious Land Use and Institutionalized Persons Act, not the First Amendment, and the Fifth Circuit held that the policy did, in fact, violate RLUIPA.[57] Though RLUIPA and the First Amendment are related, the analyses under each are distinct. RLUIPA imposes a higher burden than the First Amendment in that RLUIPA requires prison regulators to put forth a stronger justification for regulations that impinge on the religious practices of prison inmates.[58] Accordingly, RLUIPA provides greater protection than the First Amendment.[59]

Though the policy implemented by LeBlanc violated a statutory scheme, it was not so deficient as to constitute a repudiation of *constitutional* rights. Rather, the Fifth Circuit has specifically found that similar policies do not violate the First Amendment, though they may violate RLUIPA.[60] Accordingly, since LeBlanc is sued in his capacity as a policy maker and

---

[57] *Ware*, 866 F.3d at 274.
[58] *Mayfield v. TDCJ*, 529 F.3d 599, 612 (5th Cir. 2008).
[59] *Holt v. Hobbs*, 135 S.Ct. 853, 862 (2015)
[60] *See Garner v. Morales*, 2009 WL 577755 (5th Cir. 2009) (wherein the Fifth Circuit found that a grooming policy requiring prisoners to be clean shaven did not violate the First Amendment despite an inmate's Islamic faith, which required him to grow a beard. However, the Fifth Circuit found that though the policy did not violate the First Amendment, it may violate RLUIPA, and the case was remanded to the trial court for adjudication of the RLUIPA claims). *See also Ali v. Quarterman*, 434 F.App'x. 322 (5th Cir. 2011) (wherein a prison policy, which prohibited wearing a religious head covering, did not violate the free exercise clause, but plaintiff had stated a claim that the policy violated RLUIPA).

individual who played a part in implementing a constitutional policy, Plaintiff cannot recover against LeBlanc.  Similarly, Plaintiff claims he repeatedly made requests to Sharkey regarding the policy and Plaintiff's intent to let his hair and beard grow as part of his Nazareth vow.  Though Plaintiff blames Sharkey for not alerting policymakers that the policy at issue should be changed, Plaintiff does not allege that Sharkey was a policymaker, was responsible for implementation of the policy at issue, or that Sharkey had any hand in drafting or approving the policy at issue.  Plaintiff also does not allege Sharkey had the power to change the policy.[61]  Additionally, though the policy violated RLUIPA, it was not constitutionally deficient, so Sharkey could not be liable in any supervisory capacity.  Moreover, Plaintiff does not allege that Sharkey was personally involved in any alleged retaliatory attack on Plaintiff's constitutional rights.  Accordingly, Plaintiff has not stated a claim against Sharkey, and Plaintiff's claims against Sharkey are subject to dismissal.

### 3.  Plaintiff's Claims against McKey

With respect to McKey, Plaintiff claims McKey failed to investigate Plaintiff's complaints against Rowe.  Plaintiff does not, however, allege that McKey had any personal involvement in Rowe's retaliatory act.  Rather, McKey functioned as a supervisor who allegedly ignored Plaintiff's grievance regarding Rowe.  These allegations fail to state a meritorious claim because an inmate does not have a constitutional right to have his prison disciplinary or administrative proceedings properly investigated, handled, or favorably resolved,[62] and there is no procedural due

---

[61] *Compare Scribner v. Linthicum*, 232 Fed.App'x. 395 (5th Cir. 2007) (wherein the Fifth Circuit held that liability was possible for a defendant who received letters regarding a prisoner's problems and had signed off on the policy that was behind those problems).  *Also compare Hinojosa v. Livingston*, 807 F.3d 657 (5th Cir. 2015) (wherein the Fifth Circuit opined that it was possible for a defendant who had the power to change policies that led to a constitutional violation to be held liable).

[62] *Mahogany v. Miller*, 252 F. App'x. 593, 595 (5th Cir. 2007).

process right inherent in such a claim.  As stated by the United States Court of Appeal for the Fifth

Circuit in *Geiger v. Jowers*:[63]

> Insofar as [the plaintiff] seeks relief regarding an alleged violation of his due process rights resulting from the prison grievance procedures, the district court did not err in dismissing his claim as frivolous…[The plaintiff] does not have a federally protected liberty interest in having these grievances resolved to his satisfaction.  As he relies on legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless.[64]

Accordingly, McKey did not violate Plaintiff's rights even if he failed to investigate Rowe's

actions which were the subject of Plaintiff's complaints.

### 4. Plaintiff's Claims against Rowe for Retaliation and Violation of the Equal Protection Clause

Regarding the potential retaliation claims against Rowe, Plaintiff alleges that Rowe

retaliated against Plaintiff for Plaintiff's testimony against Rowe in the Gage trial.[65]  Plaintiff also

alleges that Rowe singled Plaintiff out to enforce the grooming policy when other inmates in the

same area also had beards.

Claims of retaliation by prison inmates are regarded with skepticism, lest the federal courts

potentially embroil themselves in every adverse action that occurs within a penal institution.[66]

Accordingly, to prevail on a claim of retaliation, a prisoner must establish (1) that he was

exercising or attempting to exercise a specific constitutional right, (2) that the defendant

intentionally retaliated against the prisoner for the exercise of that right, (3) that an adverse

retaliatory action, greater than *de minimis,* was undertaken against the prisoner by the defendant,

---

[63] 404 F.3d 371 (5th Cir. 2005) (in the context of the handling of an administrative grievance).
[64] *Id*. at 373-74.
[65] The first retaliatory act occurred on November 1, 2017.  Thereafter Rowe allegedly continued to retaliate against Plaintiff by having other employees issue disciplinary reports against Plaintiff and by refusing Plaintiff recreational time.  (*See* R. Doc. 18).
[66] *Woods v. Smith,* 60 F.3d 1161, 1166 (5th Cir. 1995).

and (4) that there was causation, *i.e.,* that "but for" the retaliatory motive, the adverse action would not have occurred.[67]

First, the right Plaintiff exercised that allegedly caused the retaliation was his freedom of speech. Plaintiff asserts that the motivation for Rowe's retaliation was Plaintiff's testimony against Rowe in the Gage trial, and supports this claim with allegations that Rowe, at the time of the retaliatory act, made statements to Plaintiff, such as, calling Plaintiff a "rat" or a "snitch." [68] These statements also support the idea that but for the retaliatory motive, the adverse action would not have occurred. Plaintiff further alleges that the sole reason for Rowe issuing Plaintiff a disciplinary violation was because he testified in the Gage trial against Rowe. Specifically, Plaintiff asserts that Rowe confronted him on multiple occasions regarding the testimony provided by Plaintiff.

Finally, Plaintiff must show that the retaliatory action was greater than *de minimus*. In this matter, as a result of Rowe's disciplinary charge, Plaintiff was sentenced to twelve weeks loss of recreation yard and canteen privileges. In *Morris*,[69] the Fifth Circuit announced a *de minimis* standard for prisoner retaliation claims: "Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." "[T]his [*de minimis*] threshold is intended to weed out only inconsequential actions and is not a means to excuse more serious retaliatory acts by prison officials."[70]

The Fifth Circuit has not provided a bright line test for determining when a retaliatory action exceeds the *de minimis* threshold. Whereas a transfer to a less desirable job assignment has

---

[67] *Morris v. Powell,* 449 F.3d 682, 684 (5th Cir. 2006). *See also Hart v. Hairston,* 343 F.3d 762, 764 (5th Cir. 2003); *Jones v. Greninger,* 188 F.3d 322, 324–25 (5th Cir. 1999).
[68] R. Doc. 1, pp. 14-15.
[69] 449 F.3d at 686.
[70] *Id.*

not been found to be greater than *de minimis,* a transfer to a more dangerous unit or job assignment may be.[71]  It is appropriate for the Court to consider the frequency of occurrence and the length of duration of the retaliatory action in evaluating whether the *de minimis* threshold has been met.[72]  For example, a denial of recreation or food on a single occasion is not seen to be greater than *de minimis*.[73]  It has also been found that the issuance of a single disciplinary report that is later dismissed *without* punishment is no more than a *de minimis* adverse act.[74]  Based on the foregoing case law, the alleged loss sustained is likely more than *de minimus*.[75]

Plaintiff has also sufficiently stated an equal protection claim against Rowe.  "Discriminatory enforcement of facially neutral grooming regulations may, under some circumstances, violate the Equal Protection Clause."[76]  Plaintiff alleges, in pertinent part, that though other inmates had beards, Plaintiff was singled out by Rowe and issued a disciplinary infraction while other inmates were not.  Thus, according to Plaintiff's allegations, the policy was enforced by Rowe in a discriminatory fashion.  Based on the foregoing, Plaintiff has stated a claim for monetary damages against Rowe in his individual capacity under the First and Fourteenth Amendments for retaliation and for violation of the equal protection clause.

---

[71] *Morris,* 449 F.3d at 687.

[72] *See Gonzales v. Currie,* 2014 WL 222353, *5 (S.D. Tex. Jan. 21, 2014).

[73] *Ordaz v. Lynaugh,* 20 F.3d 1171 (5th Cir.1994); *Dickerson v. Johnson,* 234 F.3d 29 (5th Cir. 2000).

[74] *See Smith v. Hebert,* 2011 WL 4591076, *8 (M.D. La. Aug.26, 2011), *affirmed,* 533 Fed. Appx. 479 (5th Cir. 2013); *Ghosh v. McClure,* 2007 WL 400648, *11–12 (S.D. Tex. Jan. 31, 2007). *See also, Brightwell v. Lehman,* 637 F.3d 187, 194 (3rd Cir.2011) (same); *Bridges v. Gilbert,* 557 F.3d 541, 556 (7th Cir. 2009) (same); *Starr v. Dube,* 334 Fed. App'x. 341 (1st Cir.2009) (same). *Cf., Zarska v. Higgins,* 171 Fed. Appx. 255, 259–60 (10th Cir.2006) (concluding, in contrast, that the mere filing of disciplinary charges, even if later dismissed, may support a claim of retaliation); *Brown v. Crowley,* 312 F.3d 782, 789 (6th Cir.2002) (same); *Dixon v. Brown,* 38 F.3d 379, 379–80 (8th Cir.1994) (same).

[75] Though the disciplinary violation was ultimately dismissed on appeal, Plaintiff still sustained a loss that could be considered more than *de minimis.*

[76] *Taylor v. Johnson*, 257 F.3d 470, 474 (5th Cir. 2001) *citing Shiloh-Bryant v. Garner*, No. 93-8159 (5th Cir. June 28, 1993) (unpublished).

### 5.  Plaintiff's Claims against Rosso

Plaintiff's claims against Rosso amount to claims that Plaintiff was not provided a fair disciplinary proceeding; that Rosso conspired against Plaintiff, specifically that "Rosso involved himself in the complicit systematic ploy to place hardships on Ceasar for his testimony in the Gage trial;"[77] and for retaliation and deprivation of property.[78]  Plaintiff's allegations regarding his disciplinary proceedings fail to state a meritorious claim.  As noted above regarding Plaintiff's claims against McKey, an inmate does not have a constitutional right to have his prison disciplinary or administrative proceedings properly investigated, handled, or favorably resolved, and there is no procedural due process right inherent in such a claim.

Plaintiff also appears to allege he was in some way deprived of equal protection in his disciplinary proceedings but provides no supporting facts regarding Rosso's role in this. Conclusory assertions couched as facts are not sufficient to defeat a motion to dismiss.[79] Accordingly, to the extent Plaintiff sought to bring an equal protection claim against Rosso, that claim should also be dismissed.

With respect to Plaintiff's claims of retaliation against Rosso, Plaintiff has failed to allege facts to establish that Rosso intentionally retaliated against Plaintiff for the exercise of his constitutional rights or causation.[80] To demonstrate retaliatory intent, Plaintiff must either produce direct evidence of retaliatory motivation or show a timeline of events from which retaliation may realistically be inferred.[81]  Plaintiff's claim of retaliation against Rosso is based only on the conclusory allegation that because the guilty verdict rendered by Rosso was later overturned,

---

[77] R. Doc. 6, pp. 5-7.
[78] R. Docs. 6, pp. 5-7; 18, pp. 1-2.
[79] *Papasan*, 478 U.S. at 286.
[80] *Morris,* 449 F.3d at 684.
[81] *See Garcia v. Gonzales*, 478 F.App'x. 928, 929 (5th Cir. 2012) *citing Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995).

Rosso must have only adjudged Plaintiff guilty because of Plaintiff's testimony in the Gage trial.[82] This is insufficient to state a claim for retaliation.[83]

Plaintiff's claim of conspiracy also fail as a matter of law. Plaintiff has failed to state sufficient facts to support a claim of conspiracy. A plaintiff who asserts conspiracy claims under civil rights statutes, such as § 1983, must plead the operative facts upon which their claim is based.[84] "Bald allegations that a conspiracy existed are insufficient."[85] With respect to Plaintiff's claim of conspiracy, Plaintiff alleges that Rosso was involved in a ploy to place hardships on Ceasar. This bald allegation with nothing more is insufficient to state a claim for conspiracy.

Finally, Plaintiff's claims regarding deprivation of his property are also without merit. Pursuant to well-established federal jurisprudence, an unauthorized negligent or even intentional wrongful deprivation of property by state employees does not amount to a violation of the procedural requirements of due process if a meaningful post-deprivation remedy for the loss is available.[86] Further, the burden is on the complainant to show that available post-deprivation remedies are not adequate.[87] In the instant case, Plaintiff has not alleged that state post-deprivation remedies are unavailable to him or are inadequate. To the contrary, it is recognized that Louisiana law provides ample remedies under which Plaintiff could proceed against Rosso for recovery of Plaintiff's property or for reimbursement for the loss.[88] Accordingly, Plaintiff's claim relative to

---

[82] R. Doc. 18, p. 2.
[83] *See Garcia*, 478 F.App'x. at 929.
[84] *Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 1987).
[85] *Id.*
[86] *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 542 (1981). This is commonly referred to as the "Parratt/Hudson Doctrine." Though Plaintiff's Complaint appears to indicate his property was taken by his cellmate. Construing the Complaint liberally, this Court also interprets the allegations as asserting that Rosso deprived Plaintiff of Plaintiff's property.
[87] *Marshall v. Norwood*, 741 F.2d 761, 764 (5th Cir. 1984). *See also, Batiste v. Lee*, Civ. Action No. 09-674, 2009 WL 2708111 (W.D. La. Aug. 26, 2009)(dismissing pro se prisoner's claims for deprivation of property as frivolous and for failing to state a claim based on the *Parratt/Hudson Doctrine*)
[88] *Id.* at 763.

an alleged loss of property is without constitutional merit.  Thus, all claims against Rosso should be dismissed.

### E.  Plaintiff's Claims Regarding Disciplinary Board Appeal Procedures

Plaintiff makes complaints, against no Defendant in particular, regarding the manner in which his disciplinary appeal was handled, specifically that the appeal opinion did not address Ceasar's arguments.[89]  Since this claim is not directed against any Defendant in particular, neither Motion has argued for dismissal of this claim; however, the Court finds that, to the extent Plaintiff is seeking to make such a claim, it is appropriate to dismiss such a claim *sua sponte*.[90]  The lack of constitutional protection to have a disciplinary claim properly investigated, handled, or favorably resolved[91] extends to appeals of disciplinary proceedings. A plaintiff does not have a constitutional right to have his disciplinary appeals handled in any particular manner or resolved any particular way.[92]  Accordingly, these claims should be dismissed.

### F.  Claims for Declaratory and Injunctive Relief Against All Defendants Should be Dismissed as Moot

Plaintiff's claims against all Defendants for injunctive and declaratory relief are moot.  The policy Plaintiff seeks to have declared void and repealed is no longer in effect.  In *Ware*, the Fifth Circuit noted that other jurisdictions provide inmates the opportunity to apply for religious accommodation that would excuse the usual grooming policy, indicating that such an exception

---

[89] R. Doc. 6, p. 2.

[90] When a district court determines that the complaint is facially deficient, it may dismiss the complaint *sua sponte* under Rule 12(b)(6).  *See Shawnee Int'l, N.V. v. Hondo Drilling Co.,* 742 F.2d 234, 236 (5th Cir. 1984) and *Carroll v. Fort James Corp.,* 470 F.3d 1171, 1177 (5th Cir. 2006).  *Carroll* requires that a plaintiff be given notice of the Court's intention to dismiss his claims *sua sponte*, and an opportunity to respond.  The objection period which follows this Report and Recommendation, as set forth in 28 U.S.C. § 636(b)(1) and Federal of Civil Procedure 72(b), satisfies the notice requirement.

[91] *Mahogany*, 252 F.App'x. at 595.

[92] *See Simmons v. Louisiana Department of Public Safety and Corrections*, Civil Action No. 17-1396, 2019 WL 923770 (M.D. La. Feb. 6, 2019) *report adopted by Simmons v. Louisiana Department of Public Safety and Corrections*, Civil Action No. 17-1396, 2019 WL 919011 (M.D. La. Feb. 25, 2019).

would render the policy consistent with RLUIPA.[93]  At the time of *Ware*, the DOC policy did not

allow for any exception.  In fall 2018, DOC changed the regulation Plaintiff complains of (B-08-

003) to include the following important exception: "Offender requests for religious exemptions to

the offender grooming standards outlined in this regulation shall be made pursuant to Department

Regulation No. B-08-005 'Faith-Based Programs and Services.'"[94]  Accordingly, the policy was

updated to provide an exception, and, based upon dicta in *Ware*, no longer violates RLUIPA.  Thus,

Plaintiff's plea for injunctive and declaratory relief based on the fact that the policy does not

conform to *Ware* is moot.

### G. Claims against the "Louisiana State Prison's Chaplains [sic] Department

Plaintiff's claims against the "Louisiana State Prison's Chaplains [sic] Department" are

also subject to *sua sponte* dismissal.  As discussed above in relation to the claims against DOC,

Section 1983 creates a cause of action against "[e]very *person* who, under color of any [state law]

... subjects, or causes to be subjected, any citizen of the United States or other person within the

jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

Constitution."[95]  Only a "person" may be sued for violation of an inmate's constitutional rights.[96]

"[A] prison or jail or its administrative departments are not entities that can be sued under Section

1983 because they are not juridical entities under state law capable of being sued and/or because

they are not persons for purposes of suit under Section 1983 as the statute and case law define that

term."[97]  Accordingly, Plaintiff is not able to state a claim against the "Louisiana State Prison's

---

[93] *Ware*, 866 F.3d at 273.
[94] R. Doc. 49-1, pp. 2-3.
[95] 42 U.S.C. § 1983 (emphasis added).
[96] *Id.*
[97] *Douglas v. Gusman*, 567 F.Supp.2d 877, 892 (E.D. La. 2008) *citing United States ex rel. Arzonica v. Scheipe*, 474 F.2d 720, 721 (3d Cir.1973); *Cullen v. DuPage County*, No. 99C1296, 1999 WL 1212570, *1 (N.D. Ill. Dec. 14, 1999); *Whitley v. Westchester County Corr. Facility Admin.*, No. 97CIV0420(SS), 1997 WL 659100, at *6 (S.D.N.Y. Oct. 22, 1997); *Sponsler v. Berks County Prison*, No. 95–1136, 1995 WL 92370, at * 1 (E.D. Pa.1995); *Powell v. Cook County Jail*, 814 F.Supp. 757, 758 (N.D. Ill.1993).

Chaplains [sic] Department." Thus, this it is recommended that "Louisiana State Prison's Chaplains [sic] Department" be dismissed *sua sponte*.

Furthermore, as noted above, individual capacity claims based upon RLUIPA are foreclosed by Fifth Circuit precedence. Accordingly, though Hebert is not a movant in these Motions, to the extent Plaintiff has attempted to make claims against Hebert under RLUIPA in his individual capacity or for monetary damages against Hebert in his official capacity, those claims are also subject to dismissal *sua sponte*.

### H. Supplemental Jurisdiction over Potential State Law Claims Should be Declined

Finally, to the extent that Plaintiff's allegations may be interpreted as seeking to invoke the supplemental jurisdiction of this court over potential state law claims, a district court may decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367. In the instant case, having recommended dismissal of the majority of Plaintiff's claims and defendants over which the district court has original jurisdiction, the Court further recommends that the exercise of supplemental jurisdiction on any state law claims be declined.

## **RECOMMENDATION**

**IT IS RECOMMENDED** that the Motion to Dismiss filed on behalf of the Louisiana Department of Public Safety and Corrections, James LeBlanc, Robert Rowe, Jeremy McKey, and Ricky Sharkey[98] be **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER RECOMMENDED** that the Motion to Dismiss filed on behalf of Willie Rosso[99] be **GRANTED** and that all claims against Willie Rosso be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that all of Plaintiff's claims against the Department of Public Safety and Corrections, James LeBlanc, Jeremy McKey, Ricky Sharkey, and the Louisiana Chaplains [sic] Department be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that Plaintiff's Claims for injunctive relief against Robert Rowe and Gabriel Hebert in their official capacities be **DISMISSED WITH PREJUDICE** and that Plaintiff's claims for monetary damages, with the exception of those arising under RLUIPA, against Robert Rowe and Gabriel Hebert, in their individual capacities remain.

**IT IS FURTHER RECOMMENDED** that Plaintiff's claims arising under RLUIPA be **DISMISSED WITH PREJUDICE** as to all Defendants, including *sua sponte* dismissal as to those who are not Movants in these Motions.

**IT IS FURTHER RECOMMENDED** that Plaintiff's claims regarding the handling of disciplinary appeals be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that this Court decline to exercise supplemental jurisdiction over any of Plaintiff's potential state law claims.

---

[98] R. Doc. 41 & 41-1.
[99] R. Doc. 56.

**IT IS FURTHER RECOMMENDED** that this matter be referred back to the magistrate judge for further proceedings on the remaining claims: Plaintiff's claims arising under the First and Fourteenth Amendments for retaliation and violations of equal protection against Robert Rowe and Gabriel Hebert, each in their individual capacities.

Signed in Baton Rouge, Louisiana, on July 26, 2019.


**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**